IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAUNDA RHYNS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 C 7994 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Raunda Rhyns has filed suit challenging the denial of her application for Social Security disability insurance benefits. Ms. Rhyns has moved for summary judgment, asking the Court to award her benefits or remand the case to the Commissioner of Social Security for further consideration. The Commissioner has moved for summary judgment upholding the denial of benefits. For the reasons stated below, the Court grants Ms. Rhyns' motion and denies the Commissioner's motion.

**Facts**

Ms. Rhyns is a thirty-nine year old woman with multiple medical problems. Her physical problems include morbid obesity; facet arthropathy throughout her lumbar spine as well as degenerative joint disorder in her spine; osteoarthritis in both knees with resulting knee pain; migraine headaches; plantar fasciitis; gastroesophageal reflux disease; and dyslipidemia. The ALJ's decision reflects that that to deal with the pain resulting from her spinal condition, Ms. Rhyns underwent two courses of physical

therapy; had a nerve cauterization; received nine steroid injections in 2009-10; uses a TENS (transcutaneous electrical nerve stimulation) unit; and has had prescriptions for a variety of pain medications, including Vicodin. Much of this stopped, however, when Ms. Rhyns lost her health insurance in the fall of 2010, about six months before her evidentiary hearing. With regard to her knee pain, she was wearing a prescribed knee brace at the time of her hearing before the ALJ and was also using a cane. In addition, Ms. Rhyns underwent gastric bypass surgery in January 2010 and initially lost some weight but then gained back a good deal of it.

In addition to her physical impairments, Ms. Rhyns has been diagnosed with depression, an anxiety disorder, and an eating disorder. She began treatment for these conditions in April 2009. A psychologist who examined Ms. Rhyns for a state agency in December 2009 following her application for benefits concluded that she had a depressive disorder; an eating disorder; and "borderline intellectual functioning." The psychologist stated that her test results – in particular an IQ score of 68, which he considered to be valid – "indicated that she functions at the top end of the extremely low range of intelligence." AR 511. He further stated, however, that Ms. Rhyns' "attention and concentration skills are such that she could carry out work-like tasks with reasonable pace and persistence." AR 512.

Ms. Rhyns graduated from high school and also took some college courses. She has professional certificates as a certified nursing assistant (CNA) and as a social worker, both of which she obtained in 2007. Ms. Rhyns was employed as a CNA at St. Olaf Residence, a nursing home, from 2007 until 2009. She was responsible for taking care of residents who needed assistance with grooming, bathing, walking, grocery

2

shopping, dressing, and cleaning. Before working for St. Olaf, Ms. Rhyns had worked as an in-home caregiver, taking patients shopping, giving them medication, doing laundry and cleaning, and preparing food.

Ms. Rhyns alleges that she became disabled on July 9, 2008. She was assisting a patient who was on a "Hoyer lift." The patient weighed 300 pounds. The lift got stuck, and Ms. Rhyns had to hold up the patient and the lift, and she strained her back. Ms. Rhyns went through ten weeks of physical therapy with "good relief" and continued at St. Olaf on a part-time basis. However, she reinjured her back in September 2008 while assisting another patient. She suffered another injury in October 2008 when she slipped and fell while on kitchen duty. She worked part-time after that in positions requiring lesser physical exertion. Ms. Rhyns discontinued her employment in September 2009. She says that she left because her physical problems prevented her from working.

Ms. Rhyns filed her application for disability insurance benefits in July 2009. Her claim was denied initially and on reconsideration. Ms. Rhyns requested a hearing before an ALJ. The hearing was held in March 2011. Ms. Rhyns and Grace Gianforte, a vocational expert (VE), both testified at the hearing.

Ms. Rhyns testified that she is able to remain standing for five to ten minutes at a time without medication and for fifteen minutes at a time with medication. She stated that without medication, she is able to sit for fifteen minutes before having to get up and can do this for twenty-five minutes at a time with medication. She testified that the most comfortable position for her is "laying [sic] down." AR 54. "Because I'm basically putting [my] feet up for the swelling to go down and I'm propping my leg up also. And

3

propping my back with the pillows behind it, I can lay [sic] down more better than standing up a lot." *Id.*

Ms. Rhyns testified that her ability to do regular household chores is limited and that her daughter and mother are responsible for the majority of the housekeeping. She stated that on a typical day, she will sit, walk around the house, make herself coffee or a sandwich, and lie down in bed due to back pain. She stated that "[t]he rest of the day, basically I'm in pain. . . . I try to sit up but I can't sit too long. I go back and I prop myself up and lay [sic] back down." AR 56. Ms. Rhyns lost her health insurance in the latter part of 2010, about six months before the evidentiary hearing. She appeared to cite this as a factor that led to decreased mobility. Prior to losing her insurance, she testified, she was "up and rotating [her] body, going to therapy, going to the psychiatrist, basically then going to another therapy." AR 57. This stopped, however, when she lost her health insurance. When asked to describe her pain level on a scale of one to ten, Ms. Rhyns said that it was a ten at the time of the hearing but had been a seven or eight a year earlier, when she was getting treatment prior to losing her health insurance. AR 52.

As noted earlier, a vocational expert (VE) testified at the hearing. The VE stated that she had "review[ed] the evidence." AR 63. She did not elaborate on what exactly she had reviewed, other than to state that she had reviewed "the 'D' exhibits and the 'E' exhibits," AR 63, which appear to be references to employment records (the "D" exhibits) and disability application records (the "E" exhibits). *See* AR, pages following 180 (list of "D" exhibits) & 210 (list of "E" exhibits). Thus there is no indication that the VE reviewed any of Ms. Rhyns' medical or mental health records, which are part of the

4

"F" exhibits.

> The ALJ asked the VE the following hypothetical question:
>
> For the following questions, let's assume an individual the same age as Mr. Rhyns. She told us she is 38 years old. She is a high school graduate with some college work, as well and has the work history you just described. Please assume only then the following limitations I will impose at this time.
>
> I wanted to start with a range of light work that involves no climbing of ladders, ropes or scaffolding. Due to the moderate restrictions in concentration, persistence or pace, I'm translating that into the following work related limitations. Only simple instructions. Only routine repetitive tasks. Only occasional changes in the work setting. Given those limitations, would any of her past work be available?

AR 64. The VE responded in the negative. *Id.* She testified, however, that the types of occupations that would correspond to the hypothetical profile were cafeteria attendant, marking clerk, and bakery worker, each of which have over 1,000 positions in the local economy. AR 64-65.

The ALJ then added the following limitation: "a stand/sit option, such that she was able to change positions every thirty minutes for five minutes at a time and when she does that she's still on task . . . ." AR 65. The VE stated that this "would preclude the occupations identified in hypothetical one." "[I]f a person needs to be able to sit when they want," the VE stated, "then we are looking at sedentary work." *Id.* The types of "short, simple, routine, repetitive sedentary jobs that would conform to this hypothetical two" would be an addressor (a clerical job), a document preparer, or a security monitor, each of which has over 1,000 positions in the local economy. *Id.* When asked if a limitation of "only occasional crouching, stooping and kneeling" would change things, the VE said this would not affect her conclusion.

The ALJ then asked, "[i]f I added to the hypothetical that the individual needed to

5

lay [sic] down for two hours during the work day, would an employer tolerate that?" The VE said, "[a]n employer would not." AR 66. In response to a further question, the VE testified that an employer would not tolerate an employee consistently missing three days per month due to her impairments. *Id.*

## Definition of disability

The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011). The issues arising in this case arise under the fifth and final step in this analysis.

## The ALJ's Decision

The ALJ determined that Ms. Rhyns was not disabled and therefore denied her claim for benefits. The ALJ came to the following conclusions:

6

1) Ms. Rhyns met the issued status requirements of the Social Security Act through June 30, 2013.

2) She had not engaged in substantial gainful activity since July 9, 2008, the alleged onset date of her disability.

3) Ms. Rhyns had a number of severe impairments: disorders of the spine, discogenic and degenerative (lumbar facet arthropathy); osteoarthritis in both knees; depressive disorder; eating disorder; personality disorder; and borderline intellectual functioning.

4) Ms. Rhyns did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically considering Listings 1.02, 1.04, 12.04, and 12.05 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5) Ms. Rhyns had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional imitations: no climbing ladders, ropes, or scaffolds; only occasional crouching, stooping, and kneeling; a sit/stand option that allows her to change positions every thirty minutes for five minutes at a time; only simple instructions; only routine repetitive tasks; and only occasional changes in the work setting.

AR 19-23. In assessing Ms. Rhyns' mental impairments, the ALJ said the following:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. The evidence reveals that the claimant has the ability to sustain focused attention and concentration sufficiently long to permit the

7

timely and appropriate completion of tasks.

AR 22.

The ALJ next addressed Ms. Rhyns' contentions regarding her level of pain and her daily activities. She found that Ms. Rhyns' allegations in this regard "are not credible." AR 24. The ALJ stated that contrary to Ms. Rhyns' testimony that she had been unable to perform household chores since November 2008 and "has essentially been bedridden since then," the medical records "paint a different picture." *Id.* These records, the ALJ stated, reported that Ms. Rhyns "enjoys going out to eat and visiting the museum. She exercises by dancing and strength training. In addition, she does a lot of walking. She also does laundry and cooks. She tries to keep herself busy as this helps her knees (Exhibits 3F, 14F, 20F, and 25F). She went on vacation to Chicago (she was living in Minnesota when this vacation occurred) (Exhibit 20F)." *Id.*[1]

The ALJ found that Ms. Rhyns' "complaints of pain are out of proportion to examination findings and her activities . . . ." *Id.* The ALJ also noted that Ms. Rhyns had not been compliant with her physical therapy regimen.

The ALJ stated, "I find [Ms. Rhyns'] complaints of pain are out of proportion to examination findings and her activities." AR. 24. The ALJ also stated that at the hearing, "the claimant was still able to move in all directions, but with some restriction due to pain. Her gait was normal." AR 24. The ALJ did not observe any difficulties with "sitting, standing, or walking." *Id.* The ALJ stated that although "this does not disprove

---

[1] The Court notes that the exhibits that the ALJ cited do not support her finding that Ms. Rhyns "exercises by dancing and strength training." Specifically, Exhibit 14F includes a report that Ms. Rhyns *previously* enjoyed dancing but could no longer do this due to her back problems, AR 509, and Exhibit 25F includes a report that "she is not exercising much." AR 628.

8

the claimant's alleged symptoms," it is "one relevant factor in reaching a conclusion about the overall credibility of the claimant's allegations." AR 25.

## Standard of review

The Court will affirm the ruling of the ALJ "if it is supported by substantial evidence and is free of legal error." *Steele v. Barnhart,* 290 F.3d 936 (7th Cir. 2002); 42 U.S.C. § 405(g). "Substantial evidence" is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000). The Court will not uphold the ALJ's decision if "it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003).

## Discussion

Ms. Rhyns' primary contention is that substantial evidence regarding her ability to perform work was lacking because the ALJ's hypothetical questions to the vocational expert did not incorporate her mental limitations. Ms. Rhyns relies on *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), in which the claimant, like Ms. Rhyns, was found by the ALJ to have "moderate limitation on concentration, persistence and pace." *Id.* at 616. The hypotheticals that the ALJ in that case posed to the VE, however, "did not . . . include a limitation on concentration, persistence and pace . . . ." *Id.* at 617.

The Seventh Circuit reversed the denial of benefits for this reason. The court stated that its cases "suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.* at 619. An exception exists, the court stated, if the record reflects that

9

the VE "independently reviewed the medical record or heard testimony directly addressing those limitations." *Id.* That exception does not apply, however, if the ALJ poses a series of hypotheticals to the VE, because in that event a court should infer that "the VE's attention is focused on the hypotheticals and not on the record." *Id.* The court also stated that it "also ha[s] let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* The court also referenced a case in which it had approved a denial of benefits when the underlying conditions causing limitations on concentration, persistence and pace were mentioned in the hypothetical even though the limitations themselves were not. *Id.* at 620. The court stated, however, that "[i]n most cases . . ., employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* (citations omitted).

   The ALJ's hypothetical question to the VE in this case did not conform to the requirements of *O'Connor-Spinner*. The ALJ did not identify Ms. Rhyns' impairments in her hypothetical. The ALJ's prefatory comment made reference to "moderate restrictions in concentration, persistence or pace," AR 64, but she did not describe these limitations or ask the VE to take them into account; rather, she "translat[ed]" those restrictions into three brief limitations: "Only simple instructions. Only routine repetitive tasks. Only occasional changes in the work setting." *Id.* Given the way the ALJ posed

the hypothetical to the VE, the prefatory reference to moderate restrictions did not capture the full extent of the limitations the ALJ had found, and thus the hypothetical did not comport with the requirements of *O'Connor-Spinner*.

None of the exceptions that the Seventh Circuit identified in *O'Connor-Spinner* applies. First, there is no basis to find that the VE had reviewed the entirety of the medical record or, more specifically, the reports and records regarding Ms. Rhyns' mental impairments. In particular, the VE did not indicate that she had reviewed the "F" exhibits, which is the part of the record that contained the pertinent mental health reports. Second, although the VE sat through the hearing, there was no testimony regarding Ms. Rhyns' mental impairments. The ALJ did not ask Ms. Rhyns about those impairments but rather focused on her physical impairments and her daily activities. Third, the ALJ's hypothetical did not "specifically exclude[ ] those tasks that someone with the claimant's limitations would be unable to perform"; it excluded no tasks at all. Fourth, the ALJ did not reference in her hypothetical Ms. Rhyns' underlying conditions (depression, borderline intellectual functioning, and personality disorder) that the ALJ had found caused Ms. Rhyns to have limitations on concentration, persistence and pace. And finally, the ALJ's questions did not differ materially from the bare reference to "simple, repetitive tasks" that the Seventh Circuit concluded is insufficient to "exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. What the ALJ said was not much different from this: "Only simple instructions. Only routine repetitive tasks. Only occasional changes in the work setting." AR 64.

For these reasons, the Court concludes that the VE's testimony was insufficient

11

to provide substantial evidence of Ms. Rhyns' ability to perform work of the type that the ALJ found she could perform. A remand is required for further examination of this point.

Because the Court is reversing and remanding on this basis, it need not address the two other issues argued by Ms. Rhyns. But because a further evidentiary hearing likely will be required on remand, the Court notes the following with regard to one of those points. The ALJ did not sufficiently explain the basis for her finding that Ms. Rhyns could perform work with "a sit / stand option that allows her to change positions every thirty minutes for five minutes at a time." AR 23 (heading 5). It is conceivable, but not at all clear, that this finding is derived from a February 2009 report by a doctor who examined Ms. Rhyns in connection with her worker's compensation claim and reported that Ms. Rhyns was able to return to work with a restriction (among others) that "allowed [her] to stand/walk up to 30 minutes per hour, sit 30 minutes per hour and alter postures as needed." AR 26. Even if this is where the ALJ derived the restriction, it is less than clear that the ALJ's RFC determination actually mirrors what the doctor found. Nor did the ALJ make the findings needed to establish that Ms. Rhyns still had this standing / sitting capacity as of the time of the hearing, which was held a little over two years after the doctor's report. The Court also notes that, as discussed earlier, Ms. Rhyns testified to a significantly lesser standing / sitting capacity than what the ALJ found. The ALJ did not specifically address this testimony in her decision but rather only made general reference to Ms. Rhyns' "report[ ] that she cannot walk or stand for prolonged periods, or her leg gives out on her." AR 23. Though the ALJ found Ms. Rhyns' allegations "not credible," AR 24, a more particularized consideration of her testimony regarding her ability to stand and sit for extended periods is required, in view

of the critical role this element plays in the RFC determination in this particular case.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion for summary judgment [dkt. no. 16] and denies defendant's motion for summary judgment [dkt. no. 22]. The Court directs the Clerk to enter judgment vacating the Commissioner of Social Security's decision and remands the case to the Commissioner for further proceedings consistent with this decision.

                                                              _____
                                                                MATTHEW F. KENNELLY
                                                                United States District Judge

Date: January 2, 2013